UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARILYN HOLLOMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:11-cv-1054 |
| v. ) | |
| ) | Judge Sharp |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON ) | |
| COUNTY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Defendant Metropolitan Government of Nashville and Davidson County ("Metropolitan Government" or "Defendant") filed a Motion for Summary Judgment (Docket Entry No. 25), to which Plaintiff Marilyn Holloman ("Holloman" or "Plaintiff") filed a response in opposition (Docket Entry No. 40), and Defendant filed a reply (Docket Entry No. 53).

## I. FACTUAL BACKGROUND

Plaintiff, Marilyn Holloman, was Director of Food Services, a department within Metropolitan Nashville Public Schools ("MNPS"), from 1992 to 2003.[1] As Director of Food Services, Plaintiff was responsible for the entire MNPS Food Service department and all of the decisions that were made within the department. These decisions included recommending employees for hiring, making decisions concerning food service equipment, budgeting for food

---

[1] Unless otherwise noted, the facts are drawn from Defendant's *Statement of Material Facts Not in Dispute* and *Plaintiff's Additional Statement of Material Facts in Dispute and Not in Dispute* and the parties responses thereto (Docket Entry Nos. 43 and 54) as well as related exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

services, and directing the school menus. Plaintiff supervised between 600 and 800 employees. And in this capacity she had coordinators who reported directly to her.

Plaintiff was removed as Director of MNPS Food Services in 2003, and, as a result, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] On August 5, 2005, Plaintiff filed a federal lawsuit against the Metropolitan Government and two individual school officials,[3] alleging that she had been the subject of disparate treatment based upon her race and gender for her removal from the Director of MNPS Food Services position.

On January 27, 2007, Plaintiff and the Metropolitan Government entered into a settlement agreement. The Settlement Agreement was made without any admission of liability, wrongdoing, or violation of law by either party. The Metropolitan Government paid all sums due under Section 6(a) and 6(d) of the Settlement Agreement. Additionally, the Metropolitan Government placed Plaintiff in the position of Director of Transportation-Human Resources ("HR") in 2007 and paid her the lump sum payment required by Section 6(c). Section 6(c) of the Settlement Agreement states as follows:

> The Board agrees to place Ms. Holloman in the position of Director of Transportation–Human Resources, effective immediately upon all parties executing this document. Her salary will be $86,000.00 annually for the fiscal year commencing July 1, 2006 through June 30, 2007, and she will receive whatever regular increases are accorded the position thereafter. The position is renewable annually. Within 30 days of starting her new position she will receive a lump sum payment constituting the difference her current salary and $86,000.00 going back to July 1, 2006, with taxes and the customary deductions taken from that amount.

(Docket Entry No. 27-3, Settlement Agreement). Section 6(e) of the Settlement Agreement states as follows:

---

[2] *Holloman v. Metropolitan Nashville Public Schools*, Claim No. 253-2004-00529.

[3] *Holloman v. Metropolitan Government of Nashville and Davidson County, et al.*, Case No. 3:05-cv-0609.

> As Director of Transportation–Human Resources, Ms. Holloman would be holding a position for which no teaching license is required, as a certificated employee. As is the case with any other certificated position, the Director of Schools retains the power to transfer her. Since she has been granted tenure, she would be entitled to the protections of the Tenured teacher's Act, T.C.A. § 49-5-501, *et seq.*, which includes the right to a Board hearing if she was ever the subject of a dismissal action.

(*Id.*).

When Plaintiff began working as Director of Transportation–HR in February 2007, she was responsible for the hiring of MNPS Transportation employees. Sometime around June 2007, she became responsible for coordinating the unemployment claims for MNPS. The unemployment claims were Plaintiff's responsibility until June Keel ("Keel")[4] reassigned those duties in July of 2009.[5] From February 2007 until March 2009, Jo Patterson ("Patterson") was the decision maker in all of the human resources related hearings concerning MNPS support employees other than transportation. From February 2007 to March 2009, Patterson worked as Director-HR over support positions within MNPS HR. Patterson was responsible for the hiring of all support staff for MNPS, with the exception of MNPS Transportation. Plaintiff was responsible for MNPS Transportation during this time period. Before Plaintiff began working as Director of Transportation-HR, Patterson, was responsible for all support hiring, including transportation. Patterson was responsible for more departments than Plaintiff.

Around March 2009, the Metropolitan Government terminated Patterson and two of her subordinates for failing to follow-up on a red-flag that was contained on the employment application of a child predator, who had been hired to work as support staff. Patterson's

---

[4] Keel was employed as Assistant Superintendent of Human Resources for MNPS from July 2003 to June 2012. (Docket Entry No. 29, Keel Aff. ¶ 2).

[5] However, Plaintiff continued to handle unemployment claims until early 2010. (Docket Entry No. 43 at ¶ 15).

3

termination resulted in a shift of personnel responsibilities within MNPS HR, which eliminated Patterson's position and caused a realignment of the supervisory structure. (Keel Aff. ¶ 5). After Patterson's termination, Keel assigned Plaintiff half of the support departments that Patterson had been responsible for, and assigned Tammy Carpenter ("Carpenter") the other half. (*Id.* at ¶ 6).

While Plaintiff had previously handled departmental hearings,[6] complaints, and grievances of MNPS Transportation employees, these duties were transferred away from her in approximately July of 2009, shortly after she took on hiring for additional support departments. Patterson's previous departmental hearing responsibilities were reassigned to MNPS employee relations in approximately April of 2009, shortly after she was terminated.

Before July of 2009, MNPS had a pay scale for certificated employees, and a separate pay scale for support employees. Also prior to July of 2009, the certificated salary schedule for administrators had seven steps. It was divided into categories dependent upon what position an individual occupied. The support salary schedule is based upon grades. There are 16 grades in the support salary schedule, with 25 steps in each grade. The certificated salary schedule for administrative employees tops out on all pay grades at a lower overall salary than does the support schedule.

Historically, in MNPS, a person performing an administrative position without a teaching license on the support scale earned a higher salary than a person with the same experience performing the same job on the certificated scale. Recognizing this disparity, Keel approached Jesse Register ("Register"), MNPS Director of Schools, requesting that persons in a position that

---

[6] Plaintiff was not the decision maker in these hearings. (Keel Aff. ¶¶ 3, 7).

did not require a teaching license be given the option to move to the support schedule, whether or not they had a teaching license. Register approved Keel's request, and Keel implemented the policy change on July 1, 2009. Each employee was given information concerning their circumstances and was told where they would be placed under either scale. Ultimately, each employee had the option as to whether they wanted to stay on the certificated scale or move to the support scale. According to Defendant, Plaintiff, who had been paid as a Director on the administrator level of the certificated scale, opted to move to the support pay scale on July 1, 2009. (Keel Aff. ¶ 12). Plaintiff, however, contends she never "opted" to move to the support pay scale on July 1, 2009. In fact, her move to the support pay scale was done by Keel without her knowledge or consent.[7]

In moving to the support pay scale, Plaintiff was provided with a salary increase and the ability to earn above and beyond the salary that she would have received if she had stayed on the certificated scale. From July 1, 2009 to June 30, 2010, Plaintiff earned a higher salary at pay grade 14 than she would have earned on pay grade 15. After June 30, 2010, Plaintiff earned less salary at pay grade 14 than she would have earned had she been assigned to pay grade 15 on the support pay scale. (Docket Entry No. 41, Holloman Decl., ¶¶ 12, 13, 14; Docket Entry No. 54 ¶ 17 ).

On December 14, 2009, Plaintiff met with Keel to express her concern that she should have been placed at pay grade 15, rather than 14 on the support pay scale. Plaintiff maintained that all director positions were on pay grade 15 except for her. On December 28, 2009, Keel responded to Plaintiff, in part, as follows:

---

[7] According to Plaintiff, the first information she received about the change in her pay scale was when she noticed on a proposed reorganization chart for the HR Department that she had been reassigned to pay grade 14. (Holloman Decl. ¶ 5).

5

> I have reviewed your job responsibilities in relation to the other HR staff placed at grade 14 and have determined that your job responsibilities are commensurate with theirs. As grades are assigned based on job responsibilities rather than job title, it is my decision that your placement on grade 14 is correct.

(Docket Entry No. 27-5). Plaintiff initiated EEOC Complaint No. 494-2010-01105 on March 12, 2010, alleging the following:

> I am an African American, female who is employed by the above-named employer as a Director, Transportation Support. The company employs more than fifteen employees.
>
> In 2007 Filed [sic] a discrimination charge against the above-named employer and a settlement was reached. On or about July 1, 2009, I was transferred by Dr. June Keel from the certified pay scale to the support pay scale and placed on Grade 14. My duties increased to other areas; from 2007 thru 2009 I began handling Unemployment claims for the HR department. July 2009 a white male was hired as a Grade 15 and given the unemployment duties. All of the white, male Human Resource Directors are Grade 15. I submitted a request on pay equity to Dr. Keel in December 2009, but the issue was not resolved and I did not receive a Grade increase.
>
> I believe I am being discriminated against because of my race (African American) and gender, female. I believe I am being retaliated against for opposing unlawful employment practices and for filing a charge of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended and the Equal Pay Act of 1963.

(Docket Entry No. 27-6).

In September of 2010, MNPS contracted with an outside firm to perform a restructuring plan for the HR department. As a result of the work performed by this outside group, MNPS implemented a restructuring in July of 2011. The 2011 restructuring caused the organizational structure of MNPS HR to change, and altered the job titles of many HR employees.

On June 13, 2011, Carpenter became the Employee Resource Center Manager, and Amber Tyus ("Tyus") was assigned to Carpenter's previous duties as Coordinator–HR. Included in the 2011 restructuring, a new Recruiting and Staffing Manager Position was created. The Recruiting and Staffing Manager position was staffed by Shirene Douglas ("Douglas"). As

6

Recruiting and Staffing Manager, Douglas is responsible for all recruiting and staffing, including the positions held by Plaintiff, Tyus, and the previous Executive Directors responsible for elementary, middle, and high school staffing. In the 2011 restructuring, Plaintiff's title was changed to Recruiter–Central Office and Transportation. In the 2011 restructuring, Tyus's title was changed to Recruiter–Schools and Support Services. The Executive Director–HR title of certificated staff recruiters Barry Potts ("Potts"), Kay Stafford ("Stafford"), and Karen Lefkovitz ("Lefkovitz") was changed to HR Staffing Liaison.

In the July 1, 2011 to June 30, 2012 fiscal year, it became apparent that the 2011 restructuring had placed Douglas on the same pay grade as the positions she supervised—pay grade 15. Accordingly, MNPS rolled those employees working under Douglas back to support pay grade 14 on July 1, 2012. Some of the persons impacted by the July 1, 2012 rollback included: Brenda King, Stafford, Potts, and Lefkovitz. Plaintiff has conceded that as of July 1, 2012, she was properly compensated on pay grade 14. Additionally, Plaintiff concedes that a supervisor should not be paid on the same grade as the positions they supervise.[8]

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is

---

[8] Thus, Plaintiff contends her "complaint regarding disparate treatment has been addressed. Her claim for back pay is now limited to the amount of money she should have earned if she had been properly assigned at pay grade 15 between 2009 and 2012, or approximately $4,000.00." *See* (Docket Entry No. 40 at 10, citing Holloman Decl. ¶ 30).

7

disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. ANALYSIS

Plaintiff has brought a claim pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") for retaliation, and asserts an additional claim for breach of contract.[9] Defendant has moved for summary judgment on both claims.

**A. Retaliation Claim**

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate by a preponderance of the evidence that (1) she engaged in a protected activity under Title VII, (2) Plaintiff's protected activity was known to Defendant, (3) Defendant took adverse employment

---

[9] In addition to the Metropolitan Government, Plaintiff brought individual claims against Jesse Register and June Keel. Register and Keel were voluntary dismissed without prejudice by Order entered on March 19, 2013. *See* (Docket Entry No. 21).

8

actions against her, and (4) there was a causal connection between the adverse employment action and the protected activity. *Taylor v. Geithner,* 703 F.3d 328, 336 (6th Cir. 2013). In *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 186 L.Ed.2d. 503 (2013)*,* the Supreme Court clarified the standard for evaluating causation in workplace retaliation cases, holding that in order to succeed on such a claim, an employee must prove that an employer's desire to retaliate was the "but for" cause of the challenged employment action. Therefore, the fourth element requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S.Ct. at 2533.

"The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool and Die Co.,* 516 F.3d 516, 523 (6th Cir. 2008) (internal quotation marks omitted). If Plaintiff establishes a *prima facie* case, Defendant then has the burden of production and must articulate a legitimate, nondiscriminatory reason for its action. *Fuhr v. Hazel Park School Dist.,* 710 F.3d 668, 674 (6th Cir. 2013). "If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Id.* at 675.

Here, Defendant does not contest the first and second elements of Plaintiff's *prima facie* case. (Docket Entry No. 26 at 11). The parties dispute the third and fourth elements, and the Court must determine whether Plaintiff was subjected to a materially adverse action and has demonstrated a causal connection between the settlement of the 2007 lawsuit and the alleged adverse actions. With respect to the third element, Plaintiff contends that that she was retaliated against in numerous ways, which transpired after the 2007 Settlement Agreement. (Docket Entry No. 40 at 13-15). Plaintiff's primary argument relates to being paid at pay grade 14 on the

9

support pay scale instead of pay grade 15.[10] (*Id.*). In addition, however, Plaintiff points to the following:

- She was given a reduction in responsibilities;

- Her responsibilities for unemployment compensation claims were given to Frank Young ("Young")[11] by Keel;

- She was directed to train Young in performing those duties,[12] and had to perform those same duties for Young in his absence; and

- She was demoted from Director of Transportation-Human Resources to Recruiter-Central Office and Transportation.[13]

(*Id.*).

At the fourth prong of Plaintiff's *prima facie* case,[14] she must offer "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or

---

[10] Plaintiff contends a disputed issue of material fact exists as to whether she "voluntarily chose to accept a change from the certified pay scale to the support pay scale." (Docket Entry No. 40 at 25). Although there is evidence before the Court that Plaintiff contested being compensated at pay grade 14 (rather than pay grade 15), there is nothing indicating Plaintiff was involuntarily moved to the support pay scale. *See* (Docket Entry No. 41-2, Letters between Plaintiff and Keel and 2010 EEOC Charge) (both disputing pay grade and not the actual pay scale). Furthermore, Plaintiff has not proffered any evidence, wherein she expressed a desire to return to the certified pay scale. Ultimately, this does not affect the Court's analysis.

[11] Frank Young was the attorney who defended Metropolitan Government in Plaintiff's first lawsuit.

[12] Defendant contends Plaintiff spent less than an hour with Young, wherein she provided him with the information necessary to find the material to perform the unemployment responsibilities. (Docket Entry No. 54 at ¶ 26).

[13] Although Plaintiff contends the alleged demotion occurred as a result of her filing the 2010 EEOC Charge, she testified under oath in her deposition that the change in title was not retaliatory. *See* (Docket Entry No. 40 at 15; Docket Entry No. 27-1, Holloman Dep. pp. 82-84).

[14] Citing *Barrett v. Whirlpool Corp.*, 586 F.3d 502 (6th Cir. 2009), Plaintiff provides, "[o]ne means of proving causation in a Title VII claim is to show that similarly situated employees were treated differently." Plaintiff contends she was the only "MNPS HR Director who was relegated to pay grade 14 on the support scale." (Docket Entry No. 40 at 19). Defendant, in turn, asserts "[a]s Dr. Keel testified, pay grade is determined by job responsibilities, not necessarily job title." (Docket Entry No. 53 at 7) (citing Keel Dep. at 21). Further, Plaintiff makes no attempt the other "Directors" had comparable job duties as her nor does she distinguish herself from "the other employees placed at pay grade 14 . . .

10

actions of the employer." *Nassar*, 133 S.Ct. at 2533. Plaintiff is required to show that Defendant's wrongful actions were the but-for cause of her termination.

Defendant argues that Plaintiff "has not offered, nor can she offer, any evidence to establish that "but-for" her having sued the Metropolitan Government many years ago and settling, that she would not have been placed at pay grade 14 as a result of the shifting responsibilities that occurred in the restructuring after the termination of Patterson." (Docket Entry No. 53 at 8). In being placed at pay grade 14 on the support pay scale, Defendant continues, Plaintiff "received a pay increase and the ability to earn above and beyond the salary that she would have received if she had stayed on the certificated scale." (*Id.* at 8-9).

In this case, Plaintiff's retaliation claim fails at the *prima facie* stage even though, just as in discrimination cases, "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Plaintiff may believe she was retaliated against, but that is not enough to carry her burden of production because "[a] plaintiff's conclusory allegations and subjective beliefs are not a sufficient basis to deny summary judgment." *Johnson v. Interstate Brands Corp.*, 351 Fed. Appx. 36, 42 (6th Cir. 2009). Furthermore, Plaintiff has failed to produce evidence of but-for causation in the instant matter. *Nassar*, 133 S.Ct. at 2533.

Even assuming that Plaintiff has satisfactorily proven her *prima facie* case, Defendant proffers sufficient evidence showing legitimate non-discriminatory reasons for its actions – and Plaintiff has failed to demonstrate that the proffered reasons was a mere pretext for retaliation. Accordingly, summary judgment is granted regarding Plaintiff's claim of retaliation.

---

despite Defendant's proof that they were the closest comparators" to her. (*Id.*). The Court finds that Plaintiff has not established she was treated differently from similarly situated employees.

**B. Breach of Contract Claim**

Breach of contract claims present questions of law that can be resolved on summary judgment. *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 96 (Tenn. 1999); *Doe v. HCA Health Servs. of Tenn., Inc.,* 46 S.W.3d 191, 196 (Tenn. 2001). "'The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract.'" *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (quoting *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

The rules underlying construction of a contract are well-known, and have been reviewed by the Tennessee Supreme Court as follows:

> A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). Th[e] Court's initial task . . . is to determine whether the language is ambiguous. *Id.* at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Id.* If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. *Id.*
>
> Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)[.]
>
> When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. *Planters Gin Co.*, 78 S.W.3d at 890. An ambiguous provision in a contract generally will be construed against the party drafting it. *Hanover Ins. Co. v. Haney*, 221 Tenn. 148, 425 S.W.2d 590, 592 (1968); *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 492 (Tenn. Ct. App. 2003). Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract. *See, Memphis Housing Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001).

12

*Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611-12 (Tenn. 2006).

Plaintiff contends that her "reduction in pay grade" and the "loss of title" constitute a breach contract by violating the terms and conditions of her settlement agreement with Defendant. (Docket Entry No. 40 at 24). In support of this contention, Plaintiff argues "the regulation of [Plaintiff] to a pay grade 14 on the support pay scale reduced her compensation between 2010 and 2012 by about $4,000.00, thereby breaching the agreement to pay [her] regular pay increases. (*Id.* at 26). Moreover, the position of Director of Transportation-Human Resources was renewed every "fiscal year until [Plaintiff] was demoted to Recruiter Central Office and Transportation." (*Id.* at 25).

> Section 6(c) of the Settlement Agreement provides the following:
>
> The Board agrees to place Ms. Holloman in the position of Director of Transportation–Human Resources, effective immediately upon all parties executing this document. Her salary will be $86,000.00 annually for the fiscal year commencing July 1, 2006 through June 30, 2007, and she will receive whatever regular increases are accorded the position thereafter. The position is renewable annually. Within 30 days of starting her new position she will receive a lump sum payment constituting the difference her current salary and $86,000.00 going back to July 1, 2006, with taxes and the customary deductions taken from that amount.

(Docket Entry No. 27-3, Settlement Agreement). Defendant counters that the Settlement Agreement "only establishes that Ms. Holloman be offered a position which pays $86,000.00 per year with the title Director of Transportation-Human Resources." (Docket Entry No. 53 at 11). Furthermore, the agreement "established that Ms. Holloman was entitled to "receive whatever regular increases are accorded the Director of Transportation-Human Resources position thereafter," and the position is "renewable annually." (*Id.*). Defendant continues, Plaintiff "ignores these two essential elements" in asserting her breach of contract claim. (*Id.*).

13

When read in its entirety, the Court finds the language of the Settlement Agreement to be clear and unambiguous. Although Plaintiff vigorously contends a breach was made, this argument is not supported by the record before the Court. Rather, turning to the undisputed facts in this case, the Court finds Defendant has upheld its end of the agreement. First and foremost, the terms of the contract indicate that the position is "renewable annually." Plaintiff's job title did not change until July 2011, some four years after the settlement agreement was executed and the change in pay scale did not occur until 2009 – both at the beginning of a fiscal year. And according to the Settlement Agreement, Defendant's actions surrounding these modifications do not constitute a breach. Second, as to the "reduction in pay" argument, Plaintiff does not dispute her initial increase in pay when moved to the new pay scale, and the evidence before the Court does not establish she endured a salary reduction nor that Defendant failed to provide "whatever regular increases are accorded the position thereafter."

Plaintiff had the burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial, and she has neglected to do so - as such, Plaintiff's breach of contract claim must fail. Summary judgment is granted with respect to Plaintiff's breach of contract claim.

## IV. **CONCLUSION**

For all of the reasons stated, Defendant's Motion for Summary Judgment (Docket Entry No. 25) will be granted and this case will be dismissed with prejudice.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

14